**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

OAKWOOD HOMES, LLC,                         Civil Action No.: _____

        Plaintiff,

    v.

CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON,

and

INTERNATIONAL INSURANCE
COMPANY OF HANNOVER LTD.,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff Oakwood Homes, LLC ("Oakwood"), by and through its undersigned attorneys, and hereby alleges and avers as follows:

## NATURE OF THE ACTION

1.  This is an action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory judgement arising from Certain Underwriters at Lloyd's of London and International Insurance Company of Hannover Ltd.'s improper failure to provide coverage to Plaintiff under Cove Programs Commercial General Liability Policy Nos. CHF13/NA13CPO1/001; CHF14/YF14CPO1/001 and CHF14/YF15CPO1/002 (collectively, "the Cove Policies").

## THE PARTIES

2.  Plaintiff, Oakwood Homes, LLC ("Plaintiff" or "Oakwood"), is a Colorado Limited Liability Company with its principal office in Denver, Colorado.

3. Defendant Certain Underwriters at Lloyd's London ("Lloyd's") are syndicates of named and anonymous individual underwriters and London market insurance companies who have subscribed to one or more insurance policies sold to Oakwood. Defendant Lloyd's is an approved eligible surplus lines insurance company in the State of Colorado. At all times relevant hereto, Lloyd's does and did transact business in the State of Colorado. Pursuant to the Service of Suit Clause contained in the Cove Policies, Lloyd's will submit to the jurisdiction of any court of competent jurisdiction within the United States, including Colorado, and will comply with all requirements necessary to give such court jurisdiction. Further, the Service of Suit Clause authorizes and directs Mendes & Mount of New York, New York to accept service of process on behalf of Lloyd's and its underwriters.

4. Defendant, International Insurance Company of Hannover Ltd. ("Hannover") is an insurance company organized and existing under the laws of the United Kingdom and is an approved eligible surplus lines insurance company in the State of Colorado. At all times relevant hereto, Hannover does and did transact business in the State of Colorado. Pursuant to the Service of Suit Clause contained in the Cove Policies, Hannover will submit to the jurisdiction of any court of competent jurisdiction within the United States, including Colorado, and will comply with all requirements necessary to give such court jurisdiction. Further, the Service of Suit Clause authorizes and directs Mendes & Mount of New York, New York to accept service of process on behalf of Hannover.

5. Lloyd's and Hannover are collectively referred to hereinafter as "Underwriters."

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction to hear this case under 28 U.S.C. §1332, based on complete diversity of citizenship between the parties, and because the amount in controversy exceeds $75,000 exclusive of costs and interests.

7. The Court has personal jurisdiction over Defendants because they do business in this District.

8. Venue is proper in the District of Colorado because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### Oakwood Homes' Promise to its Customers

9. Oakwood develops new home communities in Colorado and Utah, which consist of hundreds of homes with varying floorplans.

10. Oakwood provides its buyers with well-built luxury homes through skilled workmanship and quality materials and it stands behind its homes, workmanship and materials by providing its buyers with a limited warranty covering construction defects ("Home Performance Agreement").

11. Section I of the Home Performance Agreement titled Warranty Coverage provides that during the appropriate warranty period, Oakwood warrants that the home purchased by its customer "will be free of Construction Defects."

12. Section II of the Home Performance Agreement, which sets forth Oakwood's obligations, states:

> Upon [Oakwood's] timely receipt of written notice from [the homeowner] alleging a CONSTRUCTION DEFECT during the WARRANTY PERIOD, [Oakwood,] or parties acting on [Oakwood's] behalf, will, where [Oakwood] deem[s] necessary, inspect, investigate and/or test (including destructive testing) the condition alleged to be a CONSTRUCTION DEFECT. If [Oakwood] determine[s] that a CONSTRUCTION DEFECT exists, [Oakwood,] or parties acting on [Oakwood's] behalf, will (1) repair or replace the CONSTRUCTION DEFECT, (2) pay to [homeowner] the actual amount it would cost [Oakwood] to repair or replace the CONSTRUCTION DEFECT, or (3) pay to [homeowner] an amount equal to the diminution in fair market value caused by the uncorrected CONSTRUCTION DEFECT. Subject to the limitations described in Section IV. Coverage Limitations, if the HOME is rendered temporarily uninhabitable by a CONSTRUCTION DEFECT or by work necessary to repair a CONSTRUCTION DEFECT, [Oakwood] shall pay the reasonable cost for [homeowner's] alternate shelter until the HOME is restored to a habitable condition. Additionally, in

connection with [Oakwood's] remedy of a CONSTRUCTION DEFECT, and subject to the limitations described in Section IV. Coverage Limitations, [Oakwood] shall repair, replace or pay the reasonable cost:

- Those surfaces, finishes and coverings that are part of the HOME and that are damaged directly by a CONSTRUCTION DEFECT or that are damaged in the course of OUR repair of a CONSTRUCTION DEFECT.

- Home furnishings, carpet or personal property damaged directly by the CONSTRUCTION DEFECT.

13. Section IX, Definitions, of the Home Performance Agreement provides:

CONSTRUCTION DEFECT(S) means a condition in the materials workmanship used on constructing the HOME and/or the COMMON ELEMENTS that:

- materially affects the structural integrity of the HOME or the COMMON ELEMENTS; or

- has an obvious and material negative impact on the appearance of the HOME or the COMMON ELEMENTS; or

- jeopardizes the life or safety of the occupants of the HOME or the users of the COMMON ELEMENTS; or

- results in the inability of the HOME or the applicable COMMON ELEMENTS to provide the functions that can reasonably be expected in such a HOME or COMMON ELEMENT.

**The Insurance Coverage Provided by the Cove Policies**

(i) The Cove Policies

14. The purpose of the Cove Policies is to provide Oakwood with insurance coverage for liabilities in connection with the Home Performance Agreement.

15. Oakwood purchased Policy Number CHF13/NA13CPO1/001 for the period January 1, 2013 to January 1, 2014 with limits of $5,000,000 for Construction Occurrence, ("2013 Cove Policy").

16. Under the 2013 Cove Policy, Oakwood's self-insured retention for Coverage B "Construction Occurrence" was $500,000 per "Hub" in Colorado, of which three are listed on the 2013 Cove Policy. "Hub" relates to a defined geographic area in which Oakwood is developing homes.

- 4 -

17. Cove renewed Oakwood's insurance through Policy Number CHF14/YF14CPO1/001 for the period January 1, 2014 to January 1, 2015 with limits of $5,000,000 for Construction Occurrence, hereinafter the "2014 Cove Policy."

18. Oakwood's self-insured retention for Coverage B "Construction Occurrence" under the 2014 Cove Policy was $500,000 per Hub for three Colorado Hubs; $125,000 for the Omaha, Nebraska Hub; and $50,000 for the Salt Lake City, Utah Hub.

19. Cove renewed Oakwood's insurance again effective January 1, 2015 to March 1, 2016 with $10,000,000 Construction Occurrence limits, hereinafter the "2015 Cove Policy."

20. Oakwood's self-insured retention for Coverage B "Construction Occurrence" in the 2015 Cove Policy is $800,000 for the Metro Denver Hub; $300,000 for the Northern Colorado Hub; $250,000 for the Southern Colorado Hub; $150,000 for the Nebraska Hub; and $500,000 for the Utah Hub.

21. Under the 2015 Cove Policy, the SIRs per Hub are adjustable upwards depending on the number of units closed in a particular Hub.

22. Upon information and belief, as part of the process of purchasing each annual policy from Underwriters, Oakwood provided detailed factual background and details about its homebuilding business, including its specific building plans on a going-forward basis for the near future and its claims experience for construction defect-related issues going backward over the recent past. After reviewing and considering this information supplied by Oakwood and/or its broker, Underwriters decided annually to sell Oakwood the insurance coverage identified above.

    (ii)    <u>Coverage B Under the Cove Policies</u>

23. Coverage B, Section I.A.2.a. of the Cove Policies provides that Oakwood will be indemnified for "those sums in excess of the 'self-insured retention(s)'" that Oakwood is "legally

obligated to incur or pay as 'repair costs' for 'Home Performance Failure(s) within the products-completed operations hazard under an approved 'Home Performance Agreement'…"

24. This coverage applies to "Repair costs" that are caused by a "construction occurrence" and "arise from 'Home Performance Agreements' on 'homes' or 'common elements' that you sell, trade, give away or otherwise transfer control of during the policy period."

25. Section VI(6)(2) of the Cove Policies define "construction occurrence" for purposes of Coverage B to include a "Home Performance Failure(s)."

26. Under Section VI(15) of the Cove Policies, "Home Performance Failure(s)" is defined as "the presence of a condition or conditions arising out of the failure of the 'Home'…to conform with the standards set forth in [Oakwood's] approved 'Home Performance Agreement' or that is in violation of any state statute such as California SB 800 or equivalent statutes in other states."

27. "Repair costs" are defined in Section VI(6)(27) of the Cove Policies as "the cost to repair or replace or otherwise resolve a 'Home Performance Failure(s)'. It includes all costs covered by the '"Home Performance Agreement.'"

28. Thus, the Cove Policies provide insurance coverage for expenses incurred by Oakwood in excess of the respective SIRs to repair damage to homes covered by Oakwood's Home Performance Agreement.

### Oakwood's Claim for Insurance Coverage Under the Cove Policies

29. In February 2015, Oakwood informed Underwriters that for the 2013 Cove Policy year, Oakwood had incurred total expenses of $871,928.10 for claims under the Home Performance Agreement, which did not exceed Oakwood's $1,500,000 self-insured retention for all three Hubs.

30. At that time, Oakwood further informed Underwriters that it had incurred total expenses of $344,842.86 in the 2014 Cove Policy year, which also did not exceed Oakwood's $1,675,000 self-insured retention for five Hubs.

31. Upon information and belief, Oakwood's brokers communicated with Cove and provided information to Cove about Oakwood's warranty expenditures throughout 2015 and 2016, including providing information on warranty expenditures in April 2016.

32. In January 2017, Oakwood presented further information to Underwriters detailing its expenses for the 2013, 2014, and 2015 Cove Policy years. Oakwood's information included spreadsheets detailing every single dollar spent on repair expenses for every home potentially covered under the Cove Policies.

33. Upon information and belief, based on the information provided Cove offered to renew Oakwood's insurance program for the 2017 policy year, which Oakwood declined.

34. By letter dated June 8, 2017, Oakwood provided Underwriters additional information which provided a breakdown of repair expenses incurred by Hub and policy year.

35. At that time, Oakwood requested insurance coverage for covered losses in excess of the respective policy years' self-insured retentions.

36. By letter dated August 29, 2017, Underwriters' adjuster, Guardian Group, requested information on a sample of 92 homes which represented homes with expenses in excess of $20,000 and totaled approximately 40% of the expenses incurred by Oakwood in warranty expenditures.

37. In its letter, Guardian Group acknowledged that a feasible review of Oakwood's claim required "a more manageable number of claims for analysis," and therefore chose to review homes with expenses in excess of $20,000.

38. Underwriters then provided Oakwood with a general reservation of rights by letter dated September 14, 2017 in which it acknowledged that Oakwood was seeking coverage under Section 2 Coverage B 2.a. Home Performance Failure (Warranty).

39. According to that letter, Oakwood provided warranty spend information to Cove in 2015 and 2016, and Cove was in communication with Oakwood's brokers throughout 2015 and 2016.

40. Oakwood responded on December 14, 2017 with a matrix of information on the sample homes, including, homeowner name, address, close of escrow, Hub location, total repair expense per home, excluded repair expenses per home, claimed expenses, and a description of the loss per home. Oakwood also provided home level documentation which included invoices and proof of payment for expenses incurred on each of the sample homes.

41. Oakwood and representatives of Underwriters met on March 6, 2018 to discuss the information presented by Oakwood. Underwriters requested Oakwood's Home Performance Agreement and a breakdown of the number of homes by Hub with repair expenses in the 2013-2015 Cove Policy years. Oakwood provided this information on March 9, 2018 and March 23, 2018, respectively.

42. Despite the significant information provided to Underwriters, Underwriters continue to request significant home level information such as floorplans, photographs, correspondence with contractors and homeowners, and scope of work and logbook documentation for a large number of homes. The Cove Policies do not mandate the level of disclosure requested by Underwriters, and these requests are being made for the sole purpose of Underwriters avoiding their coverage obligations to reimburse Oakwood for the covered losses that have been submitted and documented.

43. In addition to the information provided to Cove in the December 2017 matrix and March 2018 meeting, Oakwood responded to Underwriters' September reservation of rights letter on April 9, 2018 and demanded $1,732,485.78 under the 2013 Cove Policy; $2,490,158.46 under the 2014 Cove Policy and $1,685,562.38 under the 2015 Cove Policy.

44. Underwriters responded by letter dated May 16, 2018 reiterating its so-called "reservation of rights" and indicating that Oakwood's alleged failure to seek written consent on warranty expenditures could provide Underwriters the basis to deny Oakwood's claim in its entirety.

45. Oakwood has either expressly or constructively satisfied all conditions under the Cove Policies to obtain coverage for the covered losses it has presented to Underwriters, and Underwriters' refusal to perform its obligations cannot be based on any alleged non-compliance with the Cove Policies' conditions.

## CLAIMS FOR RELIEF

### First Claim for Relief – Breach of Contract

46. Oakwood re-alleges and incorporates by reference the averments contained in Paragraphs 1 through 45, *supra*.

47. Oakwood provided detailed information to Underwriters regarding the warranty expenses incurred by Oakwood in 2015, 2016 and 2017, and have established with sufficient detail and certainty the extent of the covered losses that exist within each policy year.

48. Nonetheless, Underwriters continue to assert that even more information is required despite knowing that Oakwood's claim under Coverage B of the Cove Policies is a construction defect warranty coverage claim involving repairs in over 1500 homes.

49. Underwriters seek information that is not required under the Cove Policies, but insist that Oakwood "cooperate" with Underwriters in seeking the information.

50. Despite Oakwood's cooperation in providing substantial and sufficient information, Underwriters' seek the information with the intention of denying coverage to Oakwood for its construction defect warranty insurance coverage claim.

51. As such, Underwriters have breached the Cove Policies to Oakwood's detriment, and have failed to provide Oakwood with the benefits it purchased under the Cove Policies.

52. Accordingly, Oakwood has suffered damages as a direct and proximate result of Underwriters' breach.

53. Oakwood has also incurred, continues to incur, and will in the future incur attorney's fees and expenses to prove its coverage rights under the Cove Policies. Underwriters are liable to Oakwood for all such fees and expenses, together with interest.

**Second Claim for Relief – Breach of the Implied Covenant of Good Faith and Fair Dealing**

54. Oakwood re-alleges and incorporates by reference the averments contained in Paragraphs 1-53, *supra*.

55. In every contract of insurance, including without exception the Cove Policies, there is an implied covenant of good faith and fair dealing that the insurance company will do nothing to interfere with the right to receive benefits under the insurance policy, that the insurance company will give fair weight and at least as much consideration to the interests of the insured as it does for its own interests, that the insurer will exercise diligence, good faith, and fidelity in safeguarding the insured's interests, that it will deal ethically with the insured and will fairly and adequately inform the insured with respect to the nature and scope of its insurance coverage, and that it will communicate important information openly and transparently, particularly when a proposed action may impact the benefits provided under a policy (hereinafter referred to as the "covenant of good faith and fair dealing.")

56. Underwriters owe a duty of good faith and fair dealing to Oakwood under the Cove Policies, for which Oakwood paid substantial premiums.

57. Underwriters have breached the covenant of good faith and fair dealing by improperly delaying adjustment of Oakwood's claim through continuously requesting information not required under the Cove Policies in an effort to deny Oakwood's otherwise covered claim.

58. Underwriters' conduct is inconsistent with Oakwood's reasonable expectations, contrary to insurance industry custom and practice, contrary to legal requirements, and constitutes bad faith.

59. As a proximate result of Underwriters' breach of the covenant of good faith and fair dealing, Oakwood has been damaged in an amount in excess of this Court's jurisdictional limit, including without limitation being forced to incur all warranty expenses in excess of Oakwood's self-insured retention. Additionally, Oakwood has sustained and will continue to sustain attorney's fees and costs in this coverage action against Underwriters, as well as lost interest.

## Third Claim for Relief-Declaratory Judgement

60. Oakwood re-alleges and incorporates by reference the averments contained in Paragraphs 1-59, *supra*.

61. Oakwood seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, of the respective rights and obligations of Oakwood and Underwriters under the Cove Policies.

62. Pursuant to the terms and conditions of the Cove Policies and applicable law, Underwriters have failed to acknowledge coverage and failed to reimburse Oakwood for warranty expenses in excess of Oakwood's self-insured retentions, thereby causing harm to Oakwood and creating uncertainty concerning the insurance rights of the parties.

63. An actual and justiciable controversy exists between Oakwood and Underwriters concerning the Cove Policies, which controversy may be determined by declaratory judgment. Without limitation, Oakwood seeks a judicial declaration that the amounts paid by Oakwood are covered and reimbursable warranty expenses covered by Section 2 Coverage B 2.a. Home Performance Failure of the Cove Policies and that Oakwood is not barred from coverage under any conditions in the Cove Policies.

64. Because of the dispute created by Underwriters, Oakwood has incurred, continues to incur, and will in the future incur attorney's fees and expenses to prove its coverage rights under the Cove Policies. Underwriters are liable to Oakwood for all such fees and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Oakwood hereby demands the entry of judgment in its favor and against Defendants Underwriters and Hannover on all of the claims in the Complaint, together with an award of interest, costs, attorney's fees, punitive and exemplary damages, and such other and further relief that the Court deems appropriate, as follows:

### **WITH RESPECT TO THE FIRST CLAIM FOR RELIEF**

1. For money damages, plus pre-judgment and post-judgment interest, attorney's fees and costs, and all other compensatory damages according to proof at the time of trial.

### **WITH RESPECT TO THE SECOND CLAIM FOR RELIEF**

1. All of the above requested relief, money damages, pre-judgment and post-judgment interest, attorney's fees, costs, and all other compensatory damages according to proof at the time of trial.

2. Punitive and exemplary damages in an amount to be determined at trial.

3. All such other and further relief as the Court may deem just and proper.

## WITH RESPECT TO THE THIRD CLAIM FOR RELIEF

1. For a declaration that Oakwood is not barred from coverage under any conditions in the Cove Policies and that Underwriters owe Oakwood coverage for warranty expenses under the 2013 Cove Policy, 2014 Cove Policy and 2015 Cove Policy in excess of Oakwood's self-insured retentions under Section 2 Coverage B 2.a. Home Performance Failure of the Cove Policies.

Respectfully submitted,

Dated this 24th day of May, 2018         s/John N. Ellison
John N. Ellison, Esq.
Shruti D. Engstrom, Esq.
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: (215) 851-8100
F: (215) 851-1420
jellison@reedsmith.com
sengstrom@reedsmith.com

Attorneys for Plaintiff: Oakwood Homes, LLC